## SECOR et al. v. CLARK.

(*Superior Court of New York City, General Term.* April Term, 1888.)

DURESS—WHAT IS—ASSIGNMENT OF INTEREST TO TRUSTEE.

Plaintiffs obtained, by assignment from an attorney, an interest to the amount of $10,000 in a contingent fee for a certain collection, it being agreed that plaintiffs should be entitled to collect that amount out of the first moneys received, and should be notified when the collection was made. The attorney died, and defendant, his law partner, became his executor. The client settled the claim for the deceased attorney's services by paying the executor $25,000 in cash. Defendant, without informing plaintiffs of this fact, attempted to procure an assignment of their claim for $7,500, which was declined, but, after learning of the settlement for the fee, through fear of the loss of their entire claim, executed an assignment of it to defendant personally for $8,500. *Held,* that plaintiffs were in equity entitled to recover the balance of $1,500; their assignment to defendant, who occupied a fiduciary relation towards them, being void for duress and fraud.

Appeal from special term; JOHN J. FREEDMAN, Judge.

Action by Horace Secor, Jr., George W. Bergen, and Charles B. Page against Lemuel B. Clark. On suggestion of defendant's death, the cause was revived against Mary J. Clark, as executrix, etc., of Lemuel B. Clark. From a judgment dismissing the complaint on the merits, plaintiffs appeal.

Argued before SEDGWICK, C. J., and O'GORMAN, J.

*John T. Cornell,* (*Horace Secor, Jr.,* of counsel,) for appellants. *George W. Cotterill,* for respondent.

O'GORMAN, J. This is an appeal from a judgment of the special term, on dismissal of the plaintiffs' complaint. The main question now to be considered is whether, on the evidence, giving it the interpretation most favorable to the plaintiffs, it sustained their contention that an assignment in writing and under seal, executed by them to Lemuel B. Clark, of all their claim to $10,000, in consideration of $8,500, paid to them by him in cash, was void as against them, as being the result of duress, or of fraud on the part of said Clark, while he bore a fiduciary relation towards them. The action is brought to set aside that assignment, and for recovery of the sum of $1,500, claimed by plaintiffs to have been their money, and to have been unjustly retained and withheld by the said Clark from them. Freeman J. Fithian, a lawyer in this city, having been employed by the New England Iron Company as their attorney and counsel in their action against the Metropolitan Elevated Railway Company of New York, an agreement in writing and under seal was executed between him and the first-named company, by which it was provided that he should receive as his compensation for his services in said action a certain percentage on the amount recovered by the company in that litigation. It was also therein provided that the agreement should operate as an assignment and transfer to him, (Fithian,) his heirs, executors, or assigns, of a right to bring in the moneys so to be recovered or obtained to the amount and extent mentioned in the agreement. Shortly after the making of said agreement said Fithian executed a written assignment to Horace Secor, Jr., one of the plaintiffs, which is in the words following: "In consideration of the sum of five thousand dollars, the receipt whereof is hereby acknowledged, I, Freeman

J. Fithian, of the city of New York, do hereby assign, transfer, and set over to Horace Secor, Jr., of the same place, an interest or claim of ten thousand dollars, in and to the claim or demand or commissions to which I am now or may hereafter become entitled, under and by virtue of the annexed agreement or assignment made by and between the New England Iron Company, a Massachusetts corporation, and Edwin R. Wiggin, to and with myself, dated March 28, 1883; and I, said Fithian, covenant that said Secor shall be entitled to collect and receive said ten thousand dollars, before any moneys shall be collected or received by myself under said agreement or assignment from said iron company. And I further covenant that I have not executed any other assignment of any interest in and to said agreement or assignment to any other person or corporation. And I further agree and covenant that I will notify said Secor when the claim mentioned in said agreement or assignment shall be collected or adjusted, at once. This agreement shall apply to and be binding upon the heirs, executors, administrators, or assigns of the parties hereto. Witness my hand and seal the 8th day of August, A. D. 1883. F. J. FITHIAN, [Seal.] In presence of C. B. PAGE." On or about August 4, 1884, said Fithian died, leaving a will, and appointing his law partner, Lemuel B. Clark, as his executor; and on February 23, 1886, Clark received from the New England Iron Company the sum of $25,000, in full satisfaction and discharge of the said agreement between that company and Fithian, deceased. Clark gave a receipt therefor, as executor of said Fithian, and as survivor of the late firm of Fithian & Clark. On February 24, 1886, Clark sent to the plaintiff Secor, by a clerk in Clark's employment, a check for $7,500, and a written assignment to Clark of Secor's claim under the agreement between Fithian and him. At this time Secor had not been informed by Clark or otherwise of the said payment made by the New England Iron Company to Clark. Secor refused to execute the assignment, or to receive $7,500 in full of his claim under the agreement between Fithian and him. In the course of the day, however, he learned, by inquiry at the office of the attorneys for the New England Iron Company and elsewhere, that the litigation had been settled, and that $25,000 had been received by Clark. On the next morning Clark sent to Secor a check for $8,500, with another assignment, which Secor did sign, together with the two other plaintiffs, who had a subordinate pecuniary interest in the contract between Fithian and Secor. This assignment is in the words and figures following: "In consideration of $8,500 paid to the undersigned, the receipt whereof is acknowledged, we, and each of us, hereby sell, assign, transfer, and set over unto Lemuel B. Clark, of the city of New York, all our right, title, and interest in and to the annexed agreement, and all moneys, benefits, and advantages to be derived therefrom. Witness our hands and seals, respectively, this 25th day of February, 1886. HORACE SECOR, Jr., [Seal.] C. B. PAGE, [Seal.] GEORGE W. BERGEN, per HORACE SECOR, Jr., [Seal,] Agent." The annexed agreement then referred to was the said agreement between Fithian and the New England Company. The retention by Clark of the $1,500 from the amount of $10,000, to which Secor was clearly entitled, was not warranted by any principle of law or equity, or by any consideration disclosed by the evidence. The whole sum of $10,000, when it reached the possession of Clark, was, under the terms of the agreement between Fithian and Secor, the property of Secor, to the possession of which he was entitled even before the right of Fithian to the payment of his claim on the New England Iron Company accrued. The assignment made by Secor to Clark was not to Clark as executor of Fithian, but to him individually; and he had no right or title to demand such assignment. His retention of this $1,500 was wholly indefensible. It cannot be claimed that it was agreed to as part of a settlement of a disputed claim to that money, and it only can be sustained on the theory that it was a gift by Secor to Clark. The relations of Secor to Clark, however, were such as would render a gift by Secor to Clark

inadmissible. When Clark received $10,000, the property of Secor,—being part of the larger amount of $25,000,—he held that $10,000 in a fiduciary capacity, until paid over by him to Secor; and a gift, in such a case, could not be sustained in equity, but would have been a constructive fraud. 1 Story, Eq. Jur. §§ 307, 321–323. The motives which led Secor to consent to this deduction from the amount which he was entitled to receive, are thus stated by him in evidence: "I signed the assignment because I believed that Clark would use every device to prevent or delay the collection of the money; also because I believed it would take some time to recover a judgment against him for the money, and that, after the recovery of a judgment, I feared our ability to collect it; and I thought the amount was too large to hazard its remaining with him pending a suit for its collection; and therefore I unwillingly signed the assignment." From this it appears that Secor was not a willing party to the acquisition by Clark of this $1,500, but, on the contrary, that his will was subdued by fear of the possible loss of the whole amount unless he accepted the terms imposed on him by Clark. The parties were clearly not on equal terms, and, as the evidence now stands, it must be presumed that an unfair advantage was taken against the plaintiff Secor of the position of comparative dependence in which he was placed.

In the case of *Fisher* v. *Bishop*, 15 N. E. Rep. 331, (decided by the court of appeals in January, 1888,) the rule of equity in cases of this kind is clearly stated. The opinion of Lord CRANWORTH is there cited, (page 332,) and is as follows: "There is no branch of the jurisdiction of the court of chancery which it is more ready to exercise than that which protects infants and persons in a situation of dependence, as it were, upon others, from being imposed upon by those upon whom they are so dependent. The familiar cases of the influence of a parent over his child, of a guardian over his ward, of an attorney over his client, are the best instances." And Lord ELDON is also cited (page 332) as holding that to be "the great rule applying to trustees, attorneys, or any one else." Chief Justice RUGER, in the same case, (page 332,) says: "It will be seen that the rule is not limited to cases of attorney and client, guardian and ward, trustee and *cestui que trust*, or other similar relations, but it holds good wherever fiduciary relations exist, and there has been a confidence reposed which invests the person trusted with an advantage in treating with the persons so confiding. * * * When this relation is shown to exist, it imposes the burden of proof upon the person taking securities or making contracts inuring to his benefit to show that the transaction is just and fair, and that he has derived no unfair advantage from his fiduciary relation." " 'The doctrine of equity concerning undue influence is very broad. * * * It reaches every case, and grants relief where influence is acquired and abused, or where confidence is reposed and betrayed.'" Page 332. One who occupies a position of trust towards another should, in good faith and common honesty, be precluded from taking advantage of his situation and using the information therein acquired to the detriment or disadvantage of his employer. In my opinion, the facts of the case at bar sufficiently show that Clark held towards Secor a fiduciary relation, and a position so controlling, and so suggestive of danger to Secor, that the burden was cast upon Clark of showing that the transaction on his part was consistent with perfect good faith, and involved no unfair advantage as against Secor, and no influence tending to disturb his judgment, or force upon him a concession which otherwise he never would have made. There is no good reason, and no real consideration, for the retention by Clark of any part of this $10,000, which was the property of Secor. In the absence of all proof that he was justified in withholding it, it seems to be the clear duty of a court of equity to interpose its protection against so manifest a wrong. See 1 Story, Eq. Jur. § 311, notes, § 321. In fine, I have arrived at the conclusion—which I believe to be in harmony with the authorities above cited, and with the principles of

equity—that Clark, when the $25,000 was paid by the New England Company to him, held $10,000 thereof as the money of Secor, and for his benefit, and was bound to pay over the same to him in full on demand; that Clark held the said sum of $10,000 in fiduciary capacity, and any agreement, gift, or concession or assent on the part of Secor to the retention by Clark of any part of the said money is open to examination and criticism of a court of equity, and such agreement, gift, concession, or assent should not be held valid and binding on Secor, unless Clark proved affirmatively that he had acted in good faith in the transaction, and that he paid sufficient consideration therefor; that there is sufficient evidence in this case, as it now stands, that Secor, in signing the assignment of his claim for $10,000 to Clark for $8,500, was induced by the fact that Clark held towards him in the transaction an attitude of superior and oppressive power, by reason of which his free will was controlled, to his injury and loss, and that the assignment, so far as it contained an assent to the retention by Clark of $1,500 out of the $10,000, was of no binding force or effect on Secor; that the evidence does not disclose that any actual consideration was given by Clark for any such gift, agreement, or assent on the part of Secor.   The judgment should be reversed, and a new trial ordered, with costs to abide the event of the action.

SEDGWICK, C. J., concurs.